**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

MICHAEL C. WAIT,

        Plaintiff,

     vs.                     **Case No. 06-4024-RDR**

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

_____

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff has filed applications for social security disability income (DI) benefits and supplemental security income (SSI) benefits in 1990, 1995, 1997 and 2002. This case involves the applications which were filed in 2002. Both applications were denied initially. However, the application for DI benefits received an order of administrative reconsideration and it was determined on reconsideration that the SSI benefits application should also be reconsidered with the DI benefits claim. A supplemental hearing before an administrative law judge (ALJ) was conducted on September 23, 2003 and the ALJ issued a decision rejecting plaintiff's applications for DI and SSI benefits on October 28, 2003. Plaintiff asked for administrative review of the ALJ's decision. In the meantime, plaintiff filed a subsequent claim for SSI benefits in December 2003 which was granted on April 14, 2004. On January 13, 2006 defendant denied plaintiff's request for administrative review and adopted the opinion of the ALJ with

regard to the applications rejected by the ALJ's decision of October 28, 2003.

Plaintiff asserts a disability onset date of November 28, 1993. It is agreed that plaintiff is insured for DI benefits through December 31, 1998.

STANDARDS

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For SSI claims, a claimant becomes eligible in the first month where he is both disabled and has an SSI application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

ALJ DECISION

The ALJ found that plaintiff was born in 1956 and attained a high school degree and an associate of arts degree. The longest job plaintiff has held was as a dishwasher. He held that job for seven years and worked 15 to 35 hours per week. Plaintiff has in recent years also worked as the "night man" in a group home, where in return for room and board, he helped "keep the peace" among the residents of the home. But, according to the ALJ, plaintiff has not performed substantial gainful activity since the alleged onset date of his disability status. The ALJ determined that plaintiff has numerous medical conditions: degenerative lumbar disc disease; morbid obesity; moderate chronic obstructive pulmonary disease (COPD), with a history of chronic bronchitis and tobacco abuse; hypertension; an affective disorder; and a history of drug and alcohol abuse in reported remission. These conditions in combination were considered "severe" within the meaning of the relevant regulations, but they were not considered to meet or equal the requirements of any impairment set forth in the regulations' Listing of Impairments.

The ALJ concluded that plaintiff retained the residual functional capacity (RFC) to lift, carry, push or pull 10 pounds frequently or occasionally; to stand at least 2 hours and sit 6

3

hours throughout the course of an 8-hour workday and a normal work schedule if he has the option to alternate between sitting and standing; and to stoop occasionally.  The ALJ found that plaintiff was precluded from using his left foot to operate foot controls; from climbing ladders, ropes or scaffolding; from crawling; from work at unprotected heights or around dangerous moving machinery; and from work at extreme temperatures or in contact with noxious odors, smoke or fumes.  The ALJ determined that plaintiff was limited to simple, repetitive jobs in a low stress environment. Given all of these limitations and considering the testimony of a vocational expert, the ALJ concluded that plaintiff could not return to his work as a dishwasher, but that he could perform such jobs as an electronics assembler, a security system monitor and a photo finisher.  These jobs were determined to exist in significant numbers in the national and regional economy.

PLAINTIFF'S ARGUMENTS

Mental findings

Plaintiff's first contention in opposition to the denial of his applications for benefits is that the ALJ erred by failing to find that plaintiff suffers from a severe mental impairment. Plaintiff further argues that the ALJ did not follow Social Security Regulation 96-8p in making his findings regarding plaintiff's mental capacity.

Plaintiff juxtaposes the ALJ's finding that plaintiff's

4

affective disorder caused no more than occasional mild restrictions of plaintiff's activities, social functioning and ability to concentrate and perform simple routine and repetitive tasks (Tr. 35), with the ALJ's finding that plaintiff is precluded from mentally complex job tasks and supervisory duties and that he is limited to simple repetitive job tasks in a low stress environment. (Tr. 46). While there may be some discrepancy between these findings, plaintiff does not persuade the court that the discrepancy materially detracts from the finding that plaintiff did not meet the criteria of a listed impairment or that plaintiff had the RFC to do the jobs described in the ALJ's decision. The ALJ asked the vocational expert to limit the possible range of jobs to "low stress, nothing complex, simple, repetitive type work with no responsibility or supervision." (Tr. 558). The vocational expert was also asked by plaintiff's representative to consider plaintiff's prior workplace problems with supervisors as well as problems with his parents. This distinguishes the instant case from the decision cited by plaintiff, Wiederholt v. Barnhart, 2005 WL 290082 (10th Cir. 2/8/05), where the vocational expert was simply asked to limit the range of jobs to "simple, unskilled" tasks for a claimant that had at least mild to moderate difficulties in daily activities, social functioning and concentration.

Plaintiff contends that the ALJ failed to follow the directions of Social Security Regulation 96-8p which requires that

an RFC assessment identify limitations or restrictions on a function-by-function basis which should include a consideration of a claimant's ability to understand, remember and carry out instructions and to respond appropriately to supervision, co-workers and work pressures.

The ALJ stated that he accorded "great weight" to the findings of Dr. McKenna and Dr. Ohlde, mental health professionals who performed mental status examinations of plaintiff. (Tr. 45). He described their findings in his decision. (Tr. 42-43). These doctors concluded that plaintiff's thought content was appropriate; that he understood and could follow simple and complex instructions; that he had adequate math and concentration skills; and that his social skills, comprehension and judgment were adequate. (Tr. 396, 431). Dr. Ohlde made a diagnosis of "major depressive disorder". Dr. McKenna assigned plaintiff a GAF score of 50, suggesting a serious mental impairment. Notwithstanding these points in their reports, the narrative conclusions of these examiners support a finding that plaintiff's mental RFC permitted him to execute functions necessary in a work setting. Upon our review of the record, we find no material error in the ALJ's factual or legal conclusions in this respect.

Edema

Plaintiff's next contention is that the ALJ erred when he failed to find that plaintiff's edema was a severe impairment. The

6

ALJ discusses plaintiff's problems with edema in some detail with reference to doctors' visits in 2001 and 2002. (Tr. 40-41 and 415-421). He concluded that plaintiff's edema is "mild and essentially non-pitting when he is compliant with his prescribed medication." (Tr. 45).

Plaintiff was not engaged in substantial gainful employment during this period. His listing of daily activities and some of the testimony in the record indicate that plaintiff was relatively inactive in 2001 and 2002. It is also noteworthy that during one of his doctor's visits, defendant was advised <u>inter alia</u> to "elevate [his legs or feet] when possible." (Tr. 416). The record as a whole leaves it open to question whether plaintiff's inactivity or medication or other factors were effective alone or in combination in controlling his edema and its effects. Furthermore, the ALJ did not appear to consider the advice to elevate plaintiff's legs or to develop the record as to whether the need to elevate defendant's legs constituted a barrier to substantial gainful activity. As discussed later in this opinion, the ALJ has a duty to develop the record on points such as this and to base any conclusion regarding plaintiff's RFC and any question to a vocational expert on the basis of such a record.

<u>Credibility analysis</u>

Plaintiff has complained of pain in his lower back, knees and legs, as well as shortness of breath and fatigue. The ALJ found

7

that there was objective diagnostic evidence for "the presence of a pain-producing impairment that is related to claimant's subjective complaints of pain; however, the objective and clinical findings of record do not support the degree of pain or the functional limitations that he and his witness alleged." The ALJ also concluded that inconsistencies in the record detracted from the credibility of plaintiff and his witness.

More specifically, the ALJ doubted plaintiff's incentive to work because of his lengthy history of sporadic employment and very low earnings, as well as his receipt of $400 per month from a family trust. The ALJ also stated that the earliest treatment note of record is not dated until June 1995, more than a year and one-half after plaintiff's alleged onset date of disability. The ALJ mentioned plaintiff's testimony that he left his job as a dishwasher in 1993, not because of a physical ailment, but to move out of town to help a friend. (Tr. 489). The ALJ considered plaintiff's use of over-the-counter medication, as opposed to prescription medication, to alleviate pain. He noted that no physician has prescribed pain medication for plaintiff's knee or back. The ALJ noted that x-rays of plaintiff's left knee showed no abnormality and that physical examinations showed good range of motion and muscle strength in plaintiff's back. In particular, during one examination, plaintiff lifted 25 pounds from floor to chest. The ALJ believed this demonstrated a far greater range of

8

motion than the results of earlier tests.  The ALJ recounted that doctors had encouraged plaintiff to exercise.  This advice may not have been given, the ALJ supposed, if they thought plaintiff was incapable of exercise.  The ALJ determined that plaintiff's shortness of breath was consistent with pulmonary function studies, but he also considered that plaintiff's lungs have been clear on "multiple occasions" and that plaintiff continues to smoke cigarettes.  The ALJ counseled that plaintiff's smoking habit left him fewer financial resources for his medical care and retarded any improvement in his breathing function.  The ALJ found that plaintiff "advised multiple examiners that he engaged in substantial activities while performing his job duties as a houseparent."  (Tr. 45).

> [Plaintiff] also made similar acknowledgments in questionnaires of record wherein he reported that he had no difficulty performing tasks such as providing for his own personal care and hygiene, cooking or preparing meals, washing dishes, vacuuming the carpet, going grocery shopping, using public transportation, and playing bingo for about 2 hours at a time.  At the prior hearing, [plaintiff] admitted an ability to perform a wide range of activities of daily living and he also opined he retained the ability to perform light-duty work that accommodated his limitations.

(Tr. 45).

Plaintiff challenges the ALJ's credibility analysis.  In looking at this attack, we are mindful that "[c]redibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by

substantial evidence." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  We must examine the factual findings underlying the credibility determination to make sure that it is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation omitted).

The court has reviewed plaintiff's lengthy criticisms of the ALJ's credibility analysis.  We agree with defendant that it is proper for an ALJ to consider:  work history and possible lack of motivation to work (Rebeck, 317 F.Supp.2d at 1274); the absence of objective medical evidence (see Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987); the use of over-the-counter as opposed to prescription pain medication (Bates v. Barnhart, 222 F.Supp.2d 1252, 1261 (D.Kan. 2002); recommendations to exercise (see Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006); Curran-Kirksey v. Barnhart, 315 F.3d 964, 969 (2003)); and failure to stop smoking (Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)).  Contrary to plaintiff's argument, we find support for the ALJ's finding that on multiple occasions plaintiff's lungs were "generally . . . clear." (Tr. 390, 407, 409).

However, we do not find support for the ALJ's statement that plaintiff's activities of daily living support the denial of his claim for SSI benefits in 2002.  The court's review of the record

in this matter shows that plaintiff has asserted that his physical condition and functional capacity have diminished in strength over the years.  Plaintiff's reports of his activities of daily living in 2002 and after, contrary to the ALJ's statements, do not acknowledge an ability to perform substantial gainful activity in the court's opinion.  (Tr. 315, 332, 353).  Furthermore, these reports are corroborated by plaintiff's testimony in 2003, the testimony of plaintiff's girlfriend (Tr. 543), and the third-party information of Richard Lambert (Tr. 302).

    Development of the record

        Plaintiff asserts that the ALJ failed to properly consider plaintiff's complaints of urinary and bowel incontinence. Plaintiff testified in 2003 that the medication he took for edema caused frequent urination and sometimes "bowel movements at the wrong time." (Tr. 538).  He estimated the latter occurred three times a week. (Tr. 539).  The ALJ made reference to this testimony in his decision and stated:

> Further, [plaintiff] alleged that his "water pills" cause
> him to experience frequent urination and uncontrolled
> bowel functioning with frequent "accidents;" however, the
> medical treatment notes reveal no indication whatsoever
> that he ever made such extreme complaints to the
> prescribing physicians.

(Tr. 45).

        The medical treatment notes do indicate that on July 17, 2001, plaintiff complained of "diarrhea for 2 weeks (due to ? Lasix)." (Tr. 422).  The report of Mr. Lambert and plaintiff's report of

11

daily activities also make reference to "frequent urination." (Tr. 336, 357, 303).

The Tenth Circuit has stated that the burden is upon the applicant to prove disability in a social security case. Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006). But, the ALJ is responsible to make sure that an adequate record is developed consistent with the issues raised. Id. (citations and quotations omitted). The ALJ's duty is heightened when a claimant appears without counsel. Id.

While it may be a close call, the court believes that there is sufficient evidence in the record to require the ALJ to more fully develop the record to determine whether the problem of incontinence, either as a side effect of medication or as a result of some other condition, was a disabling factor in this case. We note that although plaintiff was represented at the hearing before the ALJ, he was not represented by an attorney. He was represented by a previous house parent of a group home. We also note other cases in which a remand was ordered to develop the record regarding the possible side effects of medication. Ferstl v. Barnhart, 360 F.Supp.2d 1181, 1193-94 (D.Kan. 2005); Musto v. Halter, 135 F.Supp.2d 220, 229 (D.Mass. 2001).

Weight assigned to various physicians of record

Plaintiff asserts that the ALJ did not properly consider the opinions of a number of doctors who have reports in the record. We

disagree with this argument.  First, plaintiff comments that the ALJ did not discuss the opinions of Dr. Charles Warrender or Dr. Emil Goering.  The court has reviewed these reports and we are convinced the ALJ did as well.  (Tr. 434, 449).  The ALJ is not required to discuss every piece of evidence.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The court does not find that the evidence from Dr. Warrender and Dr. Goering is materially inconsistent with the ALJ's conclusions.  Therefore, we find no problem with the ALJ's decision in this regard.

Next, plaintiff asserts that the ALJ inaccurately described Dr. Goren's professional qualifications.  We believe this point should have no impact upon our review.  Plaintiff also asserts that Dr. Goren's assessment of plaintiff's affective disorder was not entitled to the "great weight" given to it by the ALJ.  However, the ALJ did place significant limits upon plaintiff's RFC on the basis of plaintiff's affective disorder.  Therefore, it is clear that the ALJ considered Dr. Goren's opinion in conjunction with the opinions of Drs. McKenna and Ohlde and others in reaching a conclusion regarding the impact of plaintiff's depression upon his functional capacity.

Plaintiff further contends that the ALJ did not give proper weight to the conclusions of Drs. McKenna and Ohlde.  We disagree with this critique.  We find that the ALJ's decision is consistent with their opinions.

Finally, plaintiff criticizes the ALJ's refusal to give weight to Dr. Stacey's "check-box" opinion.  Dr. Stacey completed a form where he checked the "yes" box by a statement which read, "Does the condition <u>prevent</u> the performance of gainful employment?"  The ALJ made a full explanation of his reasons for rejecting this conclusion. (Tr. 46).  Furthermore, the check-box statement is in the nature of a conclusion as to the ultimate issue of disability.  That conclusion is reserved to the defendant's judgment.  <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. § 404.1527(e)(1).

<u>Subsequent award of benefits</u>

Plaintiff's final argument is that an award of SSI benefits which he received as of December 2003 is "reflective of a disabling impairment during the period that was before" the ALJ.  Doc. No. 11, p. 63.  This is not evidence which this court may consider.  Our task is to review the decision of the ALJ as to whether plaintiff was entitled to benefits during a period of time which was prior to the ALJ's decision.  <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1279 (11th Cir. 1999).  A subsequent award of benefits indicating that plaintiff was entitled to SSI benefits more than a month after the ALJ's decision is not relevant to this court's consideration.

CONCLUSION

In conclusion, the court finds no grounds to reverse or remand the ALJ's decision with regard to plaintiff's application for DI

benefits.   Plaintiff only qualifies for disability benefits if he can show that he was disabled prior to his last insured date, which is December 31, 1998.   Substantial evidence supports the ALJ's implicit conclusion that plaintiff was not disabled from substantial gainful activity prior to December 31, 1998.   The only arguments made by plaintiff which the court has accepted in whole or in part apply to evidence which arose after 2000.   The court shall remand this case for development of the record and further consideration by the defendant of plaintiff's application for SSI benefits in light of the comments made within this memorandum and order.   This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 10th day of January, 2007 at Topeka, Kansas.

                              s/Richard D. Rogers
                              United States District Judge